UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YOKO TRAPP,

       Plaintiff,                 CIVIL ACTION NO. 15-CV-10742

vs.                             DISTRICT JUDGE SEAN F. COX

                                 MAGISTRATE JUDGE MONA K. MAJZOUB

FORD MOTOR COMPANY
GENERAL RETIREMENT PLAN,
FORD MOTOR COMPANY, and
MARGARET TRAPP,

       Defendants.

_____/

REPORT AND RECOMMENDATION

       Plaintiff Yoko Trapp filed this action against Defendants Ford Motor Company ("Ford"), Ford Motor Company General Retirement Plan (the "Plan") (collectively the "Ford Defendants"), and Margaret Trapp asserting that she is entitled to certain funds pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), and alleging that Defendant Margaret Trapp is liable for conversion.   (*See* docket no. 9.)   Before the Court are the Ford Defendants' Motion for Summary Judgment (docket no. 24), Defendant Margaret Trapp's Motion for Summary Judgment (docket no. 26), and Plaintiff's Motion for Summary Judgment (docket no. 29).   The Parties each filed Responses, Replies, and some additional Sur-Replies to the various motions.   (Docket nos. 30, 33, 34, 35, 36, 37, and 38.)   The Motions have been referred for consideration.   (Docket no. 27.)   The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

1

I.      **Recommendation**

For the reasons stated herein, the Court should:

- **GRANT IN PART AND DENY IN PART** Plaintiff's Motion for Summary Judgment [29] as follows:

  o Plaintiff's Motion should be GRANTED with regard to the Ford Defendants.   The Court should award her benefits in accordance with the formula set forth in the Divorce Judgment as discussed herein; such benefits should be calculated by the Plan's independent actuary.

  o Plaintiff's Motion should be DENIED with regard to Defendant Margaret Trapp.

- **DENY** the Ford Defendants' Motion for Summary Judgment [24]; and

- **GRANT** Defendant Margaret Trapp's Motion for Summary Judgment [26/33]

II.     **Report**

   A.      **Facts**

The claims in this matter relate to the death of Richard K. Trapp on April 20, 2012, and the proceeds accumulated as part of his retirement plan through the Ford Defendants until the time of his retirement on October 1, 2008.    Richard Trapp married his first wife, Defendant Margaret Trapp on November 10, 1962.   He started working at Ford on January 1, 1964, at which time he joined the Plan.

The Plan, which is a defined benefit plan under ERISA, states that "Ford is 'the sole named fiduciary with respect to the Plan and shall have authority to control and manage the operation and administration of the Plan.'"   (Docket no. 24 at 10 (quoting Plan, p. 111, AR 130).)   As

Defendant notes, the Plan also states that

> Ford shall appoint a Retirement Committee, which "shall have discretionary authority to administer the benefit structure of the Plan, and to this end may construe and interpret the Plan, and may correct any defect or supply any omission or reconcile any inconsistency in such a manner and to such an extent as it shall deem expedient to carry out the purpose of the Plan" [and that] "[b]enefits under [the] Plan will be paid only if the Committee decides in its discretion that the claimant is entitled to them.   Any action of the Committee (within the scope of its functions) shall be final and conclusive upon any Member and upon every other person entitled to or claiming benefits or membership under the Plan, unless arbitrary and capricious.

(*Id.* (quoting Plan, p. 91, AR 110).)

On April 13, 1988, Richard Trapp and Margaret Trapp divorced.   The Wayne County Circuit Court entered a Default Judgment of Divorce (the "Divorce Judgment") (AR 413) and a Qualified Domestic Relations Order (the "QDRO") regarding Margaret Trapp's entitlement to Plan benefits (AR 381-85.)   The QDRO states:

> The alternate payee [(defined as Margaret Trapp)] shall be designated as the beneficiary of the Contributory and Non-Contributory Death Benefits provided by the Plan.   The alternate payee shall also be designated as the surviving spouse for purposes of the pre-retirement survivor annuity (surviving spouse death benefit) provided by the Plan.

(QDRO ¶ 5(e), AR 383).   The QDRO further states:

> The participant shall elect a benefit form that provides a survivor benefit (surviving spouse option).   The survivor benefit shall be at least fifty (50%) percent of the benefit provided to the participant during the participant's life.   The participant shall designate the alternate payee as beneficiary of this survivor benefit unless the alternate payee elects to receive her benefits in a form which provides a life annuity based on her life.

(QDRO ¶ 5(f), AR 383.)   The QDRO also notes, though, that "[i]t is the parties' intention, and the order of this Court, that the alternate payee receive a monthly benefit from the Plan of fifty (50%) percent of the participant's monthly accrued benefit under the Plan as of February 1, 1988."

3

(QDRO ¶5(a)(i), AR 382.)   The QDRO codified the general intent of Margaret and Richard

Trapp:

> The parties agree that their mutual intent is to provide the alternate payee with a retirement payment that fairly represents what they have agreed to be her marital share of the participant's accrued retirement benefit as defined in paragraph 5.

(ODRO, ¶8, AR 384.)

In that light, the Divorce Judgment also sets forth specific provisions regarding Richard

Trapp's pension:

> IT IS FURTHER ORDERED AND ADJUDGED that Husband's pension at Ford Motor Company shall be divided equally (50% to each party) between Defendant/Counter Plaintiff Husband and the Plaintiff/Counter Defendant Wife as of February 1, 1988, pursuant to a [QDRO] filed simultaneously herewith, said QDRO incorporated herein (but not merged).

> IT IS FURTHER ORDERED AND ADJUDGED that as part and provision [sic] of said [QDRO] the Plaintiff/Counter Defendant Wife shall receive any and all benefits of survivorship, early withdrawal, and supplementations to the plan, to which the Defendant Counter Plaintiff Husband is now, or may hereafter, be entitled to according to the previously mentioned formula.

> IT IS FURTHER ORDERED AND ADJUDGED that the said QDRO shall specifically provide that Defendant/Counter Plaintiff Husband shall be entitled to any retirement earned after February 1, 1988, exclusive of claim on the part of the Plaintiff/Counter Defendant Wife.

(AR 480.)   Margaret Trapp admitted that the Divorce Judgment entitled Richard Trapp to "any

retirement earned after February 1, 1988" and that she agreed to this provision.   (*See* docket no.

29 at 9 (quoting First Amended Complaint ¶¶ 55-57; Answer to Amended Complaint ¶¶ 55-57).)

Approximately one year later, on May 26, 1989, Manufacturer's Bank (serving as Ford's

Trustee for the Plan) sent Richard Trapp a letter confirming its official interpretation of benefits

under the QDRO.   The letter states, in relevant part:

>   1.   Monthly amount payable to alternate payee during period stated in paragraph 2

4

is . . . 50% of participant's accrued benefit as of 2-1-88[.]

.   .   .

2.  Monthly life income benefit begins when participant begins to receive his/her benefit and ends on earlier death of participant or alternate payee. . . .

.   .   .

4.  Survivor benefits.  Benefits are payable to surviving alternate payee after participant dies.  If alternate payee is to be treated as a surviving spouse, a special calculation by the Plan's independent actuary may be required, particularly if participant remarries.

(AR 459-60.)  Manufacturers Bank sent Richard Trapp a follow-up letter seven years later, in November 1996, summarizing benefits payable at that time and noting that "the alternate payee is entitled to receive . . . 50% of the accrued pension benefit as of 2/1/88."  (AR 465.)  Additionally, in response to an inquiry by Margaret Trapp, Ford confirmed in a September 1, 2004, letter that she was entitled to "50% of the Participant's benefit accrued as of 2/1/1988" pursuant to the QDRO. (AR 387.)

On June 10, 1988, Richard Trapp married Plaintiff Yoko Trapp.  On September 2, 2008, Richard Trapp completed a Beneficiary Designation Form as a contributing member of the Plan, indicating his desire to have Yoko Trapp named as a primary beneficiary with a 100% interest. (AR 410 and 477.)   He also provided a form confirming that Yoko Trapp was his wife and that he intended to retire on October 1, 2008.   On this same form, Richard Trapp selected the "Automatic 65% Surviving Spouse Method" for monthly benefit payments.  (AR 473.)

Richard Trapp passed away on April 20, 2012.   On May 1, 2012, the Trustee of the Plan began making payments to Yoko Trapp in the amount of $525.99 per month in accordance with the September 2, 2008 designation form.   The Trustee made these payments for 11 months,

5

totaling $5117.49.  (*See* AR 404.)   Shortly after Mr. Trapp's death, the Trustee informed Margaret Trapp of her benefit adjustment related to her surviving spouse benefits, noting that she would receive payments in the amount of $558.68.  (AR 574.)   It appears that she received payments totaling $21,039.72 from May 2012 through April 2013.  (*See* AR 389.)   After receiving her first payment, though, Margaret Trapp challenged the benefit payment, arguing that there was "a $539.71 deficit" compared to the calculation in Ford's September 1, 2004 letter. (AR 386-87.)   On April 12, 2013, Ford informed Margaret Trapp that she had been underpaid in the amount of $6,311.88 and that the appropriate monthly payment pursuant to the QDRO was $2,279.30—the entire surviving spouse benefit under Richard Trapp's pension plan.  (*See* AR 389.)   Ford also stopped payments to Yoko Trapp, and eventually informed her that she had been overpaid in the amount of $5,117.49 and requested that she repay the same.  (AR 404.)   Yoko Trapp challenged Ford's determination but was told that "[t]he denial of [her] claim [was] based on the provisions of the QDRO[,] . . . which provide[d] sole survivorship to Margaret Trapp [and which] prevail[] over the Judgment of Divorce."  (*Id.*)   Thus, Ford informer her, she was "not entitled to survivor benefits under the Plan."  (*Id.*)

Yoko Trapp began the appeal process in April of 2013, eventually hired counsel, and continued to exchange communication with Ford until her appeal was ultimately denied on August 27, 2014.  (*See, generally*, AR 391-458.)   In the interim, though, Margaret Trapp elected to receive her benefits in a lump sum payment of $297,786.90.  (*See* AR 580-89.)   Thus, Plaintiff Yoko Trapp brings this claim against the Ford Defendants under ERISA, arguing that the decision to award 100% of the surviving spouse benefits to Margaret Trapp was arbitrary and capricious, and against Defendant Margaret Trapp for conversion, arguing that she is not entitled to retain the

benefit payments properly belonging to Yoko Trapp.   (*See* docket no. 9.)

**B.    Governing Law**

**1.    ERISA**

In reviewing an administrative decision denying benefits, a district court is to look solely to the evidence and material that was contained in the administrative record at the time the administrative decision was made. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir.1998). *See also Miller v. Metropolitan Life Ins.*, 925 F.2d 979, 984 (6th Cir.1900) ("when reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made."). The *Wilkins* court then stated,

> As to the merits of the action, the district court should conduct a de novo review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

*Wilkins*, 150 F.3d at 619.

In the event the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, an arbitrary and capricious standard of review is applied rather than the de novo standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir.1998) (en banc).

*Galenski v. Ford Motor Co. Pension Plan*, 421 F. Supp. 2d 1015, 1019 (E.D. Mich. 2006), rev'd on other grounds, 290 F. App'x 815 (6th Cir. 2008).  Here, the Plan gives the administrator discretionary authority to determine eligibility for benefits, so the arbitrary and capricious standard applies.  (*See, generally*, AR 110 (stating that "[t]he committee shall have discretionary authority to administer the benefit structure of the Plan, and to this end may construe and interpret the Plan,

and may correct any defect or supply any omission or reconcile any inconsistency in such manner and to such extent as it shall deem expedient to carry out the purpose of the Plan").)

Nevertheless, this matter turns largely on interpretation of the QDRO. And "a plan administrator's construction of an ERISA-qualified QDRO is reviewed *de novo* because it involves issues of contract interpretation." *Guzy v. Ameritech Corp.*, 50 F. Supp. 2d 706, 710 (E.D. Mich. 1999) (citing *Hullett v. Towers, Perrin, Forster & Crosby,* 38 F.3d 107, 110 (3d Cir.1994).) Thus, as Defendant points out, a two-step standard of review applies in this matter: first, the "Court will review *de novo* the terms of the QDRO;" second, "[a]fter a determination has been made as to the correct scope of the terms contained in the QDRO, the Court then will review the administrator's denial of plaintiff's claim under the 'arbitrary and capricious' standard." *Id.* at 711. A plan administrator's decision on eligibility of benefits is not arbitrary and capricious "if they are 'rational in light of the plan's provisions.'" *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)(quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991)). When applying this standard, the court should take "into account the entire record before the administrator at the time of the determination that [the plaintiff] was not entitled [to the requested benefits]." *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir. 1988). In determining plan eligibility, the plan administrator must adhere to the plain meaning of its language and a decision relating to benefit eligibility must be based on a reasonable interpretation of the plan. *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926 (6th Cir. 2000). Simply stated, a plan administrator's determination of eligibility must be "rational in light of the Plan's provisions." *Brooks v. General Motors Corp.*, 203 F. Supp. 2d 818 (E.D. Mich. 2002).

8

### 2.    Conversion

Plaintiff's state-law conversion claim is adjudicated under the traditional summary-judgment standard.   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."   *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).   Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).   The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).   "The court need consider only the cited materials, but it may consider other materials in the record."   Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."   *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

> **C.     Analysis**

Although there are ten filings related to the instant motions, they all address two core issues: (1) whether the Ford Defendants' decision to award 100% of the surviving spouse benefits to Defendant Margaret Trapp was arbitrary and capricious; and (2) whether Defendant Margaret Trapp converted funds belonging to Plaintiff Yoko Trapp contrary to Michigan Law.   Thus, the undersigned will consider the motions concurrently.

> **1.     Plaintiff's ERISA Claim Against the Ford Defendants**

With regard to the QDRO, the parties do not challenge whether the QDRO in this matter satisfies the criteria set forth under 29 U.S.C. § 1056(d)(3), thus excepting the QDRO from ERISA preemption under 29 U.S.C. § 1144(b)(7).   (*See*, *generally*, docket no. 24 at 15-16.)   Therefore, the QDRO supersedes any plan terms and controls the beneficiary designation.   *Guzy*, 50 F.Supp.2d at 713.   And as such, it is interpreted under principles of contract law.

"[W]hen the terms of an agreement are clear and unambiguous, the Court need not consider any evidence beyond the plain language of the agreement in order to determine the rights and

obligations of the parties." *Fed. Deposit Ins. Corp. v. AmTrust Fin. Corp.*, No. 1:10 CV 1298, 2011 WL 334976, at *8 (N.D. Ohio Jan. 31, 2011), *aff'd sub nom. In re AmTrust Fin. Corp.*, 694 F.3d 741 (6th Cir. 2012) (citing *Ferro Corp. v. Cookston Group, PLC*, 585 F.3d 946, 950 (6th Cir.2009); *Med Billing, Inc. v. Med. Mgmt. Sciences, Inc.*, 212 F.3d 332, 335 (6th Cir.2000)). [T]he terms of an agreement . . . [are] considered ambiguous if their meaning cannot be clearly discerned from the four corners of the document in which they are contained, or when the language can is (sic) susceptible of more than one reasonable interpretation." *Id.* (citing *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir.2008)).   And "if an ambiguity exists, the Court may consider extrinsic evidence, and utilize other traditional methods of contract interpretation to discern the true terms or meaning of the agreement." *Id.* (citing *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir.1996)).

Plaintiff argues that the QDRO entitles Margaret Trapp to benefits accrued only through February 1, 1988, and that to the extent any ambiguity exists in the QDRO, the Court should resolve the ambiguity by reviewing the Divorce Judgment.   (Docket no. 29 at 17-29.)   The Ford Defendants argue that the QDRO is unambiguous in that "although Margaret Trapp was entitled to only a portion of the monthly life income benefits under the Plan, . . . she is entitled to all death benefits and/or surviving spouse benefits under the Plan."   (Docket no. 24 at 17-18.)   Thus, they contend, the Court cannot consider extrinsic evidence "to create ambiguity where none exists." (*Id.* at 18.)

Turning specifically to the QDRO, the Court finds that the document itself is neither clear nor unambiguous with regard to the amount of surviving spouse benefits to which Margaret Trapp is entitled.   The central provision in the QDRO related to these benefits is Paragraph 5(f):

11

> The participant shall elect a benefit form that provides a survivor benefit (surviving spouse option).  The survivor benefit shall be at least fifty (50%) percent of the benefit provided to the participant during the participant's life.  The participant shall designate [Margaret Trapp] as beneficiary of this survivor benefit unless [Margaret Trapp] elects to receive her benefits in a form which provides a life annuity based on her life.

(AR 383.)   The Ford Defendants accurately juxtapose this provision against the monthly benefit provision, which specifically entitles Margaret Trapp to "fifty (50%) percent of the . . . monthly accrued benefit . . . as of February 1, 1988," to note that the surviving-spouse provision does not include such a limitation.   But the Ford Defendants take their reading of this provision too far in arguing that this provision entitles Margaret Trapp to "all death benefits/and or surviving spouse benefits."   (*See* docket no. 24 at 18.)   To the contrary, unlike Paragraph 5(a), Paragraph 5(f) does not specifically entitle Margaret Trapp to *any* surviving-spouse benefits; instead, Paragraph 5(f) required Richard Trapp to elect a benefit form that would provide Margaret Trapp with a minimum of a 50% surviving-spouse benefit.   Nothing in this provision sets forth the amount of surviving spouse benefits to which Margaret Trapp is entitled.   Even read liberally, Paragraph 5(f) entitles her to 50% of the surviving-spouse benefits, but any further entitlement is unclear.

Moreover, as Plaintiff argues, Paragraph 5(d) contemplates Richard Trapp's right to "designate a beneficiary other than or in addition to [Margaret Trapp]" for his benefits.   (AR 383.) The Ford Defendants argue that this provision only applies to monthly benefits under the plan because Margaret Trapp is the sole beneficiary for surviving spouse benefits.   (Docket no. 37 at 4.)   While such a reading of Paragraph 5(d) is plausible, it is not the only reasonable interpretation.   Nothing in Paragraph 5(d) limits its application to monthly benefits; again, to the contrary, Paragraph 5(d) applies to "benefits" in general.   Finally, the preamble of the QDRO sets forth the parties intent: "the clear intent of the parties [is] to effectuate a transfer, and assignment of

12

award to [Margaret Trapp] one-half of all [of Richard Trapp's] accrued pension benefits through February 1, 1988."   (AR 381.)

Having found that the QDRO is unclear with regard to the amount of surviving spouse benefits to which Margaret Trapp is entitled, the Court can consider the Divorce Judgment as extrinsic evidence of the parties' intent.   When read together, the unmistakable intent of Richard Trapp and Margaret Trapp at the time of their divorce was for Margaret Trapp to receive 50% of the benefits accrued through the time of their divorce.   The Divorce Judgment clarifies this intent through the following provisions:

> [Richard Trapp's] pension . . . shall be divided equally (50% to each party) between [Richard Trapp] and [Margaret Trapp] as of February 1, 1988, pursuant to the [QDRO] . . . .
>
> . . . [Margaret Trapp] shall receive any and all benefits of survivorship, early withdrawal, and supplementations to the plan, . . . according to the previously mentioned formula.
>
> [T]he [QDRO] shall specifically provide that [Richard Trapp] shall be entitled to any retirement earned after February 1, 1988, exclusive of claim on the part of [Margaret Trapp].

(AR 480.)   As such, the Ford Defendants erred when they determined that Margaret Trapp was entitled to all of the surviving-spouse benefits under the Plan.   Therefore, the Court should grant Plaintiff Yoko Trapp's Motion for Summary Judgment in part with regard to the Ford Defendants and should award her benefits in accordance with the formula set forth in the Divorce Judgment. The Court should deny the Ford Defendants' Motion for Summary Judgment.   As contemplated by Manufacturer's Bank through its on May 26, 1989, letter to Richard Trapp, Yoko Trapp's benefits should be calculated by the Plan's independent actuary.   (*See* AR 459-60.)

### 2.     Plaintiff's Conversion Claim Against Defendant Margaret Trapp

13

As a preliminary matter, the undersigned notes Plaintiff's acknowledgment that "if [she] is made whole by the Ford Plan, [she] will not seek duplicative damages from Margaret Trapp." (Docket no. 36 at 7.)   Thus, having recommended that the Court grant Plaintiff's Motion with regard to the Ford Defendants, the undersigned recommends denying Plaintiff's Motion in part with regard to Margaret Trapp and granting Defendant Margaret Trapp's Motion for Summary Judgment.   Nevertheless, the undersigned will address the substantive merits of Plaintiff's claims against Margaret Trapp in the event the Court rejects the recommendation herein.

Plaintiff argues that Defendant Margaret Trapp committed conversion under Michigan common law when she took possession of the surviving-spouse benefit proceeds with knowledge that Yoko Trapp was the appropriate beneficiary of a substantial portion of those funds.   (*See* docket no. 29 at 21.)   Plaintiff further contends that she is entitled to treble damages under M.C.L. § 600.2919a, Michigan's statutory conversion rule.   "Under Michigan law, the tort of conversion differs from statutory conversion in that the 'tort of conversion is 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.' ... [while] [s]tatutory conversion, by contrast, consists of knowingly 'buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property.''"   *Gillom v. Ralph Thayer Automotive Livonia*, 2005 WL 1640273 at \*2 (E.D. Mich. July 13, 2005) (citing *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich.App.1999)); Mich. Comp. Laws § 600.2919a).

> To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care. *Check Reporting Services, Inc. v. Michigan Nat'l Bank–Lansing,* 191 Mich.App. 614, 478 N.W.2d 893, 900 (1991). It is clear that when the dispute is over moneys owed, conversion is only applicable in cases involving money that is the property of one party but held by another party (e.g., bank accounts, trusts, etc.) which is then wrongfully

14

> taken. *See Trail Clinic, PC v. Bloch,* 114 Mich.App. 700, 319 N.W.2d 638 (1982) (allowing a conversion claim when one party appropriated checks payable to another party); *Rennie v. Pentagon Refining Co.,* 280 Mich. 1, 273 N.W. 325 (1937) (conversion found where one party appropriated funds from another party's brokerage account).

*Sudden Serv., Inc. v. Brockman Forklifts, Inc.*, 647 F. Supp. 2d 811, 815 (E.D. Mich. 2008).

Plaintiff contends that "[t]his is a claim for conversion of a specific fund – the portion of Richard Trapp's surviving spouse pension that rightfully belongs to Yoko Trapp."   (Docket no. 36 at 8.) In support of this contention, Plaintiff relies on *Citizens Ins. Co. v. Delcamp Truck Center, Inc.*, which held that "[a]n action for conversion lies where an individual cashes a check and retains the full amount of the check when he is entitled to only a portion of that amount." (*Id.* (quoting 178 Mich.App. 570, 576 (1989).)   Plaintiff asserts that this matter is similar; that is, Margaret Trapp received a lump sum from Ford, but she was only entitled to a portion of those funds.

Plaintiff's reliance on *Citizen's Ins. Co.* is misplaced.   While the undersigned agrees with Plaintiff that Defendant Trapp is not entitled to the entire lump sum that she received, these funds were not entrusted to Margaret Trapp's care.   The funds paid to Margaret Trapp by Ford were not being "held" for any purpose.   Although Plaintiff (or the Ford Defendants) may be entitled to recover these funds from Defendant Trapp, a claim for conversion is not the appropriate vehicle through which to do so.   Therefore, Plaintiff's Motion for Summary Judgment should be denied in part with regard to Defendant Trapp, and Defendant Trapp's Motion for Summary Judgment should be granted.[1]

---

[1] There is some discussion by Plaintiff with regard to the form of Defendant Margaret Trapp's Motion for Summary Judgment.   Plaintiff argues that Defendant Margaret Trapp's Motion should be denied because she relies solely on the Ford Defendants' argument.   (*See* docket no. 34 at 13; docket no. 26.)   While the undersigned acknowledges the lack of substance in Defendant's motion, the practical effect of denying Defendant's Motion on these grounds would

### D.      Conclusion

For the reasons stated herein, the Court should:

- **GRANT IN PART AND DENY IN PART** Plaintiff's Motion for Summary Judgment [29] as follows:

  o  Plaintiff's Motion should be GRANTED with regard to the Ford Defendants.   The Court should award her benefits in accordance with the formula set forth in the Divorce Judgment as discussed herein; such benefits should be calculated by the Plan's independent actuary.

  o  Plaintiff's Motion should be DENIED with regard to Defendant Margaret Trapp.

- **DENY** the Ford Defendants' Motion for Summary Judgment [24]; and

- **GRANT** Defendant Margaret Trapp's Motion for Summary Judgment [26/33]

## III.   Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report

---

result in Plaintiff's claims against Defendant Trapp proceeding unnecessarily and without a legal basis.   Moreover, Defendant Trapp cured this deficiency through a supplemental brief and in her response to Plaintiff's Motion.   (*See* docket nos. 33 and 35.)

and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:   May 12, 2016                           s/ Mona K. Majzoub_____
                                                             MONA K. MAJZOUB
                                                             UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated:   May 12, 2016                           s/ Lisa Bartlett
                                                             Case Manager

17